May it please the court, John Wallace for Dwight Brunoehler. I would like to reserve the balance of my time for rebuttal. Dwight Brunoehler is well-known in the stem cell field. He was hired as CEO of a company, BioStem. He suspected manipulation of its stock and started an investigation. He deferred his salary so BioStem could pay for the investigation. He complained about monkey business at the company in a phone call, and that phone call the FBI agents intercepted by a wiretap. All of a sudden he was arrested for a pump-and-dump securities fraud scheme, even though Dwight himself did not sell any stock, and he could not because his stock was restricted. His life has never been the same. No publicly traded company would consider hiring him. So Dwight sued for damages, but his three claims were dismissed at the pleading stage, without any discovery, without oral argument. The district court, in determining standing, guessed at when Dwight's calls were intercepted for purposes of the Fourth Amendment, and it could not know when his calls were made, but it concluded that he didn't have standing because only certain calls were mentioned, but we haven't had discovery. We don't know that his calls were not previously intercepted. The district court took it on itself to decide whether the wiretap application said probable cause, and it states that at page 9 of its opinion, but it does that at the pleading stage. It makes a finding of fact of probable cause, but it doesn't have all the information. We don't even know if all of the wiretap applications have been unsealed. The FBI sought to unseal applications, which we don't know about because they were sealed. So we still don't know which ones exist. The district court also relied on an affirmative defense at the pleading stage. The good faith reliance on a wiretap order. That's at page 10 of the decision. That's not appropriate at the pleading stage. It was not briefed. We don't know what the agents did internally. That requires discovery, and it's really the tail wagging the dog when you say someone applies for an order and then they, in good faith, rely on the order. It's what's in their application that's the key issue, whether they omitted information. The district court then applied Bivens. Mr. Bernholer asserted Bivens, a case where one's allowed to proceed. In that case, the police invaded someone's house. In Bernholer's case, he didn't have broken bones. His house was not invaded in that manner, but the fact is his life was changed even more so because his bones aren't at issue. They can heal. His wounds could heal. This cannot heal. But it's not the classic Bivens case, is it? And under Ziegler, what do you do about that? Ziegler. Okay. So what we're clear on is Bivens says there are two tests. That Bivens is a disfavored remedy. Okay. Not quite, and I can quote what the court actually said about Bivens. It said in Ziegler, a Bivens remedy is needed in the search and seizure context where its continued force or even necessity remains unquestioned. Or, in other words, in the common and recurrent sphere of the search and seizure context in which it arose. So it has continued force. The wiretap is a search and seizure activity? Yes. Seizing a phone call. Why isn't the wiretap act an adequate remedy? Well, for a number of reasons, but that's not the adequacy of a remedy, if I may. There are two ways a Bivens case could not proceed. One is if defendants show alternative remedies. But what's clear from Bivens and Carlson and other Supreme Court cases and many other cases throughout the country is that there are two requirements. One is that there be an express congressional statement that this is an alternative remedy to Bivens. And second, that Congress says it's equally effective. So no one cited any congressional statement, not the district court, not defendants. There is none. That should end the first part of the test. The district court did not consider the second test. It said there are other remedies. It didn't consider any congressional statement, which is required. And your citation for the rule that an express statement by Congress in black and white that this is intended to be an alternative remedy to Bivens is what case? Well, Bivens and Carlson particularly. Well, Bivens can hardly say that there has to be an alternative to Bivens. So, I mean, where do you get the statement that you've just made here that there has to be an express congressional statement? In Bivens and Carlson, I'll explain why in Bivens, the court considered whether there should be an action directly under the Constitution. And it decided if Congress said that there's an alternative remedy, you can't sue directly under the Constitution. Then in Carlson, it's reiterated. There are other Supreme Court cases as well. That's why when the district court did not address the two requirements for that alternative remedies test, agents now say they're not required. They say the current approach in Ziegler is not to require these two things. Okay. So I cited the various post-Ziegler cases. I counted 82 as of the time of my reply brief. I quoted cases in which they continue to cite these two requirements. Agents have not cited a single case after Ziegler that states their really extreme position, that Ziegler implicitly or impliedly did away with two requirements. Supreme Court precedent is not done away with by implication. There has to be some statement. We are overturning this part of Bivens or Carlson. I guess let me ask you this way. Doesn't Ziegler basically show us that the alternative remedy doesn't need to be explicitly designated as such or a perfect alternative to Bivens? I'm just trying to figure out how does Carlson survive Ziegler? I'd like to explain that. Particularly since Ziegler does not say we're overruling. Ziegler concerned the second test, the special factors test. Our case does not concern that. This report specifically said I'm not deciding on the special factors. What Ziegler said was if there's an alternative remedy that doesn't have the congressional express statement, it can still be considered as one of the factors for the special factors test. That's what Ziegler said. And it's reasonable. And the conclusion that agents reach on its face is correct if you're talking about the special factors test. But it's not correct as to the alternative remedies test, which remains there are two requirements for that one. That's the one the court decided. And there is no express congressional statement. So there would have to be some if we are to assess the special factors test, that really requires some briefing on it. So what would the Wiretap Act have to say to fill or it seems like the existence of a separate structure that governs wiretaps and provides a remedy, the Wiretap Act, evidence of a legal mandate would constitute a meaningful difference and that under Ziegler and therefore preclude extension of Bivens to your claims relating to the wiretaps. The wiretap could certainly be considered under the special factors test. But absent an express statement by Congress that this is alternative to Bivens and it's equally effective. Can I ask you about, was the district court wrong to find that you did not properly allege standing in the Missouri wiretap? It seems your second amendment complaint does not link your theory of the necessity flaw in the wiretap application with the Missouri wiretap application. And you don't seem to challenge the district court's dismissal of your wiretap claims as to the failure to allege standing. But you raise other reasons why you had standing. So I'm trying to figure out what your position is on that. The district court could not reach the standing issue in our opinion because we don't know when the calls were made. We know when a couple of calls were made that the FBI chose to point to, but we don't know the full gamut of calls. Not at the pleading stage. And so what the district court tried to do was parse as to which applications Brunel are at standing. But we really don't have a sufficient factual foundation to do that parsing. Maybe someday we will. Maybe at summary judgment we will. But right now, we can't do that. Does he have standing on this one? What's the time period? Was there any contact involving Brunel? You know, we need to get discovery and find out from the FBI what intercepts were during that first wiretap application. Then the next one as well. And so forth. In fact, in the July 2011 application, Brunel is named as a target subject. So he's recorded in June, maybe before, but in June they decide now he's becoming a target subject. And that leads to presentation to the grand jury and indictment and arrest. So there's indications that there were other wiretaps even after July. But again, if they're not unsealed and I don't get discovery, I can't make allegations. So I'd ask the court to let us proceed, have our day in court. We offered a short and plain statement of the claim. There is substantial information I could proffer. We could amend the complaint. You agree that as of the present time, your allegations are that Brunel was not wiretapped in the Pacino wiretap? We don't know. We don't know which calls were intercepted. Let's try to answer my question. You have not alleged that he was wiretapped in the Pacino? We did not allege that. All right. You've alleged that he was recorded in the Mazur wiretap, right? Yeah. What was wrong with the Mazur application? We're not limiting the claim to just the Mazur wiretap. He's designated as a target defendant. Let me explain, if I may. It's not just that one invasion we're talking about. The investigation by the FBI was so incredibly flawed, they didn't even apparently know his stock was restricted and couldn't be dumped. There's no indication in the applications that basic documents were reviewed, like trading records and securities filings and contracts and board minutes. There's no interviews mentioned of people in the press releases, of board members, of Securities Council, which reviewed the press releases, or even of Brunel himself. There's no mention of the company's own investigation into these matters. There's no mention that Brunel had a deferred salary, that his stock was restricted. They didn't learn the most basic facts, and yet the very person who's trying to find out what's going on gets his life earned as a result. Do you want to save some time for rebuttal? Yes. Thank you. Good morning. Kyle Hoffman for Defendants Jeremy Tarwater and Charles Koepke, and I'm here with my colleague Dan Butcher. There have been a number of things thrown up here at the Court, and I would just like to focus on the fact that the two things that have been appealed were the finding that the Bivens claim was foreclosed because there were alternative remedies and the supposedly improper factual finding about standing. Those were the two issues appealed. So let's talk about the Bivens. How are Mr. Brunel's claims as to his alleged unlawful arrest and search any different than the claim involved in Bivens itself? Bivens was a case where officers went into a person's private home with the person's consent, no warrant, but then arrested him, handcuffed him, threatened to arrest his family, and hauled him into court. So no statute involved. Just your garden variety Fourth Amendment search and seizure case, arrest without a warrant, and search and seizure without a warrant. Contrast that with the case here. An unlawful arrest and search. Well, recall, Your Honor, that one of the things that Ziegler says constitutes a meaningful difference is the legal and statutory mandate under which the officers are operating. What's the legal and statutory mandate here? Sections 2500 through 2520 of Title III of the Omnibus Crime Control Bill. In other words, the Wiretap Act. There's a very lengthy, specific statutory regime here where there isn't in the Bivens garden variety Fourth Amendment. I guess that's an additional on the Wiretap Act, but the other at its core seems to be very similar, the unlawful arrest. Your Honor, I guess... Just from your briefing, I'm just trying to figure out, what language in Ziegler tells us that facts of one's claim have to align up nearly identical to the facts involved in Bivens? It seems like your argument, at least from your briefing, for a person to bring a Bivens case, it must line up with Bivens not only legally but also factually. Am I understanding your argument correctly or not? The short answer to that is I'm not sure. What I would point to is the language in Ziegler, which says, for instance, the claims against the prison warden were very similar in practical effect to the claims in Carlson v. Green, a Bivens case that was approved, and the Supreme Court said that. And it also said the practical differences are small, but they're nonetheless meaningful. It's enough to make it a new context. I guess let me ask you this, because I'm not getting the clarity I would like. Tell me the facts under which, in your mind, someone can still bring a Bivens claim after Ziegler. Well, Your Honor, it would seem, from the Supreme Court's own language, that it has to be pretty close to the facts in Bivens or the facts in Passman or the facts in Carlson v. Green. They've essentially said we are not creating causes of action anymore to enforce constitutional rights. That's if they haven't been previously approved by this Court. That's the language of Ziegler. So that's your position? Our position is what the Supreme Court's position is. And if the case is different in a meaningful way from previous Bivens cases decided by this Court … And this one is different in a meaningful way because it doesn't completely factually line up? No. The prong I would rely on most is, and this is just from the categories that the Supreme Court said, is the statutory framework. And these are not trick questions. I just really want to understand what your view is, what your position is. Well, we, in a sense, have to go with what the Supreme Court tells us, which is these are the kinds of things that count as contextual differences. One of them is the statutory or other legal mandate under which the officer was operating. And when you compare one where it's just your garden variety Fourth Amendment case versus another where it's this very detailed statutory regime, Title III, that's enough. Now, there are factual differences, too. There's a warrant here, as opposed to no warrant in Bivens. But it's not just … It seems, and I may be incorrect, that Mr. Bruner is claiming unlawful arrest and search, and wiretap is part of it, but also a separate part of it. There is a separate statutory regime. But at the core and base of it, is it not an unlawful arrest? And does that line up with Bivens? And I'm just asking. Okay. Here's what I would suggest about that, Your Honor, is that the entire complaint is predicated on the notion that the Pacino wiretaps were obtained illegitimately, and that this started the train rolling to get the Mazur wiretaps, which led to his interceptions, which led to his indictment, and so on. But the arrests, for instance, of Mr. Bruner, were accomplished pursuant to after an indictment. So it was an arrest warrant, not a warrantless arrest. So what I'm trying to suggest is that the linchpin, the thread, it all starts with the supposedly illegitimately gotten Pacino wiretap applications, as to which there's been no allegation that he was ever intercepted. So the arrest, the indictment, the interception, all of that hinges on, the linchpin is always the beginning, the Pacino wiretap applications. So that's why I'm saying it's not just an arrest, it's not just a search. The searches were accomplished pursuant to a warrant, and they were of other people's homes. We briefed this in the district court. We didn't brief it here because he didn't appeal it here. It was only the issue of, is Bivens, does he have an adequate alternative remedy, and does he have standing? So what I'm suggesting is that some of this, the discussion that we're having, and some of the discussion that came beforehand, all of that's been waived. The district court did all this. We briefed all of this. We didn't hear because it wasn't raised in their opening brief. So I guess your argument is that because the unlawful search and arrest that he is alleging stems from the wiretap, that makes it meaningfully different? Is that what your argument is? I'm just reading his complaint. That's the theory of his complaint. That's, if you look at paragraph 50, but for the Pacino wiretap applications, none of this would have happened. 71 of his complaint. The Missouri wiretap application relies on the evidence from the Pacino wiretap application. But it is, then it becomes an unlawful, or that's alleged to be an unlawful search and arrest. And then, and it's true you all withdrew the case against him. I mean, you dropped the case against him based on some things that had occurred. But where was the unlawfulness, Your Honor, is what I'm suggesting. Is the unlawfulness has always been alleged to be back with respect to the Pacino wiretap application. Let me ask you just a slightly different question. For the Wiretap Act claims that the district court dismissed, could Mr. Brunholer have amended his complaint to allege that the Missouri wiretap was unlawful because it was based off a false necessity because Mr. Tarwater omitted the details about Missouri being a government informant? Well, the answer is yes. I mean, would that get him in standing to then challenge the wiretap? The answer is yes and no. And the reason it's yes is if he had alleged there was that kind of impropriety in the Missouri wiretap application, that would give him standing to challenge that application. He didn't do so. He didn't make that kind of allegation. The reason I say no, Your Honor, is because, and we pointed this out in our brief, there is actually some discussion in that June 27, 2011 application for the Missouri wiretap of Missouri's past cooperation. So they're on the horns of a dilemma there. That's what they would need to allege to get standing, but they really can't because the wiretap application does talk about Missouri's past efforts. And we've pointed to that. I think it's supplemental excerpts of Record 523 where that appears. So that's why the answer is yes and no. It could have been, but it would fail. Well, it didn't, and it would have a real problem. It's a real problem to how you would allege it, given that the wiretap application isn't the same as the one in the Pacino wiretaps. Is there any way for the Court to look at the Bivens analysis here and to break out the allegations of false arrest from any wiretap issues? I don't think so, Your Honor. Why not? Because I would point to, again, the but for language of paragraph 50, but for the Pacino wiretap application, none of this would have happened. That's the lynchpin of the complaint. I guess, how does the Wiretap Act provide a sufficient alternative remedy for Bruner if we decide that Bivens relief is not available? First of all, Your Honor, I don't think it's the case that it has to be equivalent. And I point to cases, including cases cited by the Court in Ziegler, where the remedies, the alternative remedies can be less generous and they need not be perfectly congruent, point one. Point two, the Wiretap Act, I mean, counsel says, well, there wasn't ever any declaration from Congress that the Wiretap Act was meant to protect this. And I look back at the Senate report on the provision for civil damages, and it says, the provision for civil damages, the scope of the remedy is intended to be both comprehensive and exclusive, but there's no attempt to preempt parallel state law. This is the Senate report from the 1968 Title III. When they passed the- Was that language put in the act? No. That's just from the Senate report. But we don't know if any senator read it or voted for it. That's a comment on the Senate, Your Honor, which I'm going to pass on that. And you're saying, I just want to understand this clearly, that if there's an allegation of a false arrest or an unlawful search, and if it's as a consequence of a bad wiretap, then that person who was falsely arrested and unlawfully searched has only a remedy under the Wiretap Act. There's no Bivens remedy or case there? That's correct, Your Honor. And you think that's what Ziegler counsels? I do, Your Honor, because, I mean, if you think about it, the Wiretap Act- Didn't the district court find that there was a Hyde Amendment remedy? Well, there are others. There are others as well. But the one that's most on point is the Wiretap Act. As far as I understand it, it provides for a jury trial, provides for punitive damages, provides for civil damages. So- Sorry? For what? For false arrest and- Well, actually, I'm not precisely sure how the damages are listed, but I think it's for the consequences of the bad wiretap. It would be up to the trier of fact whether that was a true consequence or not. I understand that you could say that plaintiff's arguments all stem from the Pacino wiretap. That's what you're saying, right? But at some point, it seems, the arrest was illegal based on his allegations, and that is the same theory involved in Bivens. I guess I'm- And also, I mean, defendant couldn't, I mean, what's left after Ziegler, when asked, I don't think Ziegler meant to get rid of Bivens, just limit it. I agree. But at the core, though, you're saying any time there's a wiretap violation that results in an unlawful arrest, no Bivens. That's your position. Well, I'm- I'm not sure that lines up exactly with Bivens. I'm saying that if it doesn't line up exactly with Bivens, then it's a new context. I mean, I'm not sure that that's what Bivens stands for, what you're saying. All I'm suggesting is that here the context is different enough to be meaningful, for the reasons I gave previously, and in that case the court is to look to whether there are not just adequate or alternative remedies, but any alternative remedy. And in this case, you've got the Wiretap Act, which sets out a civil provision for damages and is very precise about what can happen. And in that case, a Bivens remedy should not be implied per orders of the Supreme Court because there is an alternative remedy. That's the nearest one, apart from the Hyde Act, apart from the criminal remedies. That's the one right on point. So just so I understand, if there's any- is there any other context in which an illegal search and seizure, unlawful arrest, would occur under a different statute where Bivens would still be in play? I'm sure there would be, Your Honor. I don't- Really? Because it sounds like what you're saying is if there's any statutory remedy out there at all, Bivens is not in play. Well- That's what I took your argument to say. I mean, I'm trying to be, in a sense, a ventriloquist and talk about what the Supreme Court says. It's not me. It's what I'm reading. I'm trying to read Ziegler and say what they say, and they say any alternative remedy. Well, it's your argument. And so be the ventriloquist and tell us what you think Ziegler says in a context, whether it's the Wiretap or some other statute that provides a remedy. I think it would be very difficult to have a Bivens remedy. Okay. So what you are really saying, there's no other remedy. There's no Bivens remedy anymore where there's a statutory remedy. Yes. What about the position that the appellant has here that he should be entitled to discovery if for no other reason than to determine whether the Pacino intercept was, quote, against a person, of a person against whom the interception was directed? Well, first of all, they have the Pacino Wiretaps because they cited them in their complaint. Second of all, I mean, this issue was, we went through the complicated procedural history in the district court for a reason. This issue was raised in our first round of motion to dismiss, that they hadn't alleged that they were intercepted over Pacino. They said, well, we'd like to amend our complaint. We said, okay, fine, do it. They did so and they didn't allege it. So they were on notice about this a long time ago. And they didn't ask the district court, we need to allege, we can allege this or we need discovery on this. They never asked the district court for that. And the final thing, it's a little frustrating, and I apologize in a way for making a request for judicial notice so late, but I look back at the criminal discovery and the underlying matter, and everything, as would be the case in a criminal case, was divulged to Brunel's attorney in the criminal case way back in 2013. All right. I think we have your position. Thank you, Your Honor. We'll give you a minute to do a rebuttal. Thank you, Your Honor. If I could clarify the issue of when an alternative remedy is different. It comes about because Bivens in its following cases said, if there is no alternative remedy that Congress said is equally effective, then you examine whether special factors require caution in extending Bivens to a new context. So that's how the discussion evolves as to whether the case is similar to Bivens or not. In the special factors analysis, that's what Ziegler was concerned about, and they expanded that test by saying, well, even if an alternative remedy doesn't fit nicely within the first test, in the second test you can consider it, but it's just you can consider it. And the district court didn't. It didn't get that far. Is deterrence one of those special factors? Is deterrence of such behavior one of those special factors? I believe so. Yeah. The court is free to consider various factors in determining whether to expand Bivens to a new context. That's how the special factors analysis comes into play. So it's not simply asking me today whether I perceive differences. Okay. So it's a test that just does not apply here. With respect to what is in the complaint and not, there are specific allegations as to certain wiretaps, Pacino wiretap, the Mazur wiretap. But the point is there are also general allegations we raised. And all we're required to do is offer a short and plain statement. If I may, the reason why the other wiretaps were known to us is because Judge Stephen Wilson found that there were omissions in the wiretap applications by the same defendants in the same matter. And they were ordered to brief the issue whether the omissions were designed to mislead or made in reckless disregard. And the court held a Franks hearing. And because the government didn't want a decision, it asked to dismiss the case. But the fact is this case arose because of what we knew about the applications based on Judge Wilson's findings. All right. I think we've exhausted your time. The case of Bruno v. Tarwater will be submitted. Thank you, counsel, for the presentation.
judges: Bea, Murguia, Keeley